IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAE GORDON-KELLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-cv-426-RAW-GLJ |
| | ) |
| SHERYL TATUM, NICOLE | ) |
| ELLISON, BELINDA HAAGSMA, | ) |
| | ) |
| Defendants. | ) |

### REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Sheryl Tatum's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). The Court has referred this case to the undersigned Magistrate Judge for all pretrial and discovery matters, including dispositive motions, in accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72. *See* Docket No. 15. For the reasons set forth below, the undersigned Magistrate Judge finds Defendant Sheryl Tatum's Motion to Dismiss and Brief in Support Thereof [Docket No. 17] should be GRANTED IN PART and DENIED IN PART.

### Procedural History

Plaintiff originally filed this action on November 13, 2023, in the District Court of Pittsburg County, Oklahoma, in Case No. CJ-2023-286. Plaintiff subsequently filed two amended complaints, the last one on December 1, 2023. *See* Docket No. 2, Ex. 16 ("Second Amended Complaint"). The Second Amended Complaint asserts a claim for retaliation against Plaintiff under the Sarbanes-Oxley Act, 18 U.S.C. §§ 1514, *et al*. and

in violation of 71 O.S. § 71-819. *Id*. In particular, Plaintiff alleges the Defendants conspired to commit actual fraud by violating certain security laws on behalf of K12 Inc. as well as certain actions related to Plaintiff's employment agreement with K12 and accusations that Plaintiff committed child abuse while employed by K12. *Id*., p. 1-2. Ultimately, Plaintiff describes her claim as one seeking damages under Sarbanes-Oxley for "intentional retaliation for a damaged reputation, personal humiliation, and false, felonious and unethical accusations which jeopardized her teaching credentials." *Id*., p. 6. After being served, and at the time the only defendant who had been served, on December 18, 2023, Tatum removed the case to this Court based on federal subject matter jurisdiction and supplemental jurisdiction as to the state law claim pursuant to 28 U.S.C. §§ 1331 and 1367. *Id*. Tatum now moves to dismiss the case in its entirety. *See* Docket No. 17.

**Background**

This is not the Plaintiff's first foray into this Court over issues arising from her employment with K12. Plaintiff previously filed a lawsuit in this Court styled and numbered *Eddie M. Kelly v. K12 Inc., Oklahoma Virtual Charter Academy, Adura Plummer, and Nicole Ellison*, 17-cv-453-RAW ("K12 Lawsuit")[1] on December 11, 2017, arising out of her March 2016 termination from K12 and allegations of, *inter alia*, race and age discrimination, and retaliation. *See* 17-cv-453-RAW, Docket No. 2. The K12 Lawsuit was ultimately resolved by arbitration pursuant to an arbitration agreement

---

[1] Tatum asserts and Plaintiff does not dispute that she is the same person as Eddie M. Kelly in the K12 Lawsuit.

Plaintiff entered into as part of her K12 employment. *Id.*, Docket No. 49. Plaintiff's K12 Lawsuit claims were denied by the arbitrator, and the decision was confirmed by the District Court on July 10, 2020 and affirmed by the Tenth Circuit Court of Appeals on May 10, 2021. *Id.*, Docket Nos. 75 & 117; 854 Fed. Appx. 963 (10th Cir. 2021).

In the current action against various K12 employees during her K12 employment, Plaintiff alleges a litany of complaints under the rubric of a Sarbanes-Oxley retaliation claim, including that she was retaliated against and replaced with a less qualified non-minority, that her professional reputation was harmed after complaining about "prohibited activities", she was deprived of a right to equal protection to settle disputes based on a true and accurate contract, that the Defendant and other "co-conspirators" retaliated and conspired to terminate her through child abuse and parental complaints, securities laws were violated by submitting false and misleading reports, invoices and forged teacher work schedules, and some of the Defendants or other individuals gave false or perjured statements presumably in the K12 Lawsuit. *See* Docket No. 2, Ex. 16. Plaintiff seeks damages under Sarbanes-Oxley for reinstatement, attorneys' fees and costs, and special damages, including non-economic damages. *Id.*, p. 7.

## Analysis

Tatum moves to dismiss Plaintiff's Sarbanes-Oxley retaliation claim as being time barred, failing to exhaust administrative remedies, and failing to state a claim. Tatum also seeks to dismiss Plaintiff's claim under 71 O.S. 819 for failure to state a claim and any other state law claims Plaintiff may be alleging as time barred. Lastly, Tatum seeks

the Court's certification that any appeal by Plaintiff in this matter would not be taken in good faith to deny her *in forma pauperis* status.

**Applicable Standard**

In reviewing a motion to dismiss, the Court "assume[s] the truth of all well-pleaded facts in the complaint," and construes all reasonable inferences in the light most favorable to the Plaintiff. *Western Watersheds Project v. Michael*, 869 F.3d 1189, 1193 (10th Cir. 2017). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. (8)(a)(2). Although detailed factual allegations are not required, the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, *v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 577). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555-557, 570). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "whether the complaint sufficiently alleges facts

supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (*quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

    **A.**    **Failure to Exhaust Administrative Remedies Under the Sarbanes-Oxley Act**

The only Sarbanes-Oxley section cited by Plaintiff and that creates a cause of action for an employee of a regulated entity is the civil whistle-blower provision. 18 U.S.C. § 1514A. This provision prohibits a company from discriminating against an employee in the terms and conditions of employment because of any lawful act done by the employee:

> to provide information, cause information to be provided, or otherwise assist in an investigation which the employee reasonably believes constitutes a violation of ... any rule or regulation of the Securities and Exchange Commission, or any provision of Federal Law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by—
> (A) a Federal regulatory or law enforcement agency;
> (B) any Member of Congress or any committee of Congress; or
> (C) a person with supervisory authority over the employee.

18 U.S.C. § 1514A(a)(1).

As a threshold to asserting a cause of action in federal court under Sarbanes–Oxley, the employee must exhaust her administrative remedies by filing a complaint with the Occupational Safety and Health Administration ("OSHA") and affording OSHA the opportunity to resolve the allegations administratively. 18 U.S.C. § 1514A(b)(1)(A). The administrative complaint must be filed "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the

violation." 18 U.S.C. § 1514A(b)(2)(D). If the employee meets these requirements for a particular violation, and a final administrative decision has not issued within 180 days of the filing, the employee can proceed with an action in federal court based on that violation. 18 U.S.C. § 1514A(b)(1)(B). Although not jurisdictional, this exhaustion requirement is mandatory and is "akin to a statute of limitations." *Newman v. Lehman Brothers Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018) (quoting *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999)).

As a result, Plaintiff was required to file her Sarbanes-Oxley complaint with OSHA not later than 180 days after the violation occurs. "Under federal discrimination statutes, the time for filing an administrative charge of employment discrimination begins running when a discrete unlawful practice takes place." *Rzepiennik v. Archstone-Smith, Inc.*, 331 Fed. Appx. 584, 588-89 (10th Cir. 2009) (citing *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007). Moreover, "[a] discrete adverse action 'takes place' when a decision is made and communicated to the plaintiff, even if the effects of the action do not occur until later." *Id*. at 589 (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). *See also* 29 C.F.R. § 1980.103(d) (a Sarbanes-Oxley violation occurs "when the discriminatory decision has been both made and communicated to the complainant.").

The Second Amended Complaint is vague about what the alleged discrete adverse action is that serves as the basis for Plaintiff's retaliation claim. Although Plaintiff generally alleges she was "retaliated against and injured", the clearest description of her claim is in the first paragraph numbered "2" on page 5 of the Second Amended

Complaint, in which she alleges she "was retaliated against and replaced with a less qualified non-minority for complaining about lack of transparency and accountability as well as prohibited and deceptive activities in this claim." *See* Docket No. 2, Ex. 16. Taking the allegations in the Second Amended Complaint as a whole and considering Plaintiff's allegations in the K12 Lawsuit, it is apparent that the discrete adverse action that is the basis for Plaintiff's retaliation claim is her March 2016 termination from K12. *See*, *e.g.*, 17-cv-453-RAW, Docket Nos. 2 at ¶ III.A, 49 & 75, Ex. C.[2] Plaintiff alleges she submitted a letter "detailing the complaint" to the Department of Labor on May 15, 2023, and sent unspecified follow up letters in July and September 2023. Thus, by any measure, Plaintiff's May, July and September 2023 complaints were years after the 180-day deadline from her termination.

Indirectly acknowledging the fatal defect of her belatedly filing the administrative complaint, Plaintiff argues her OSHA complaints were timely because of equitable tolling due to Defendants' actively misleading her with respect to the cause of action, extraordinary circumstances preventing her from asserting her rights, and she raised the precise statutory claim but mistakenly in the wrong forum. None of these allegations,

---

[2] Judicial notice may be taken at any stage of a civil action, including at the motion to dismiss stage. Fed. R. Evid. 201(d); *see also Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011) (noting that under Rule 201, judicial notice may be taken "whether requested or not," and "at any stage of the proceeding"). A court may take judicial notice of its own files and records, as well as facts which are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). A court may also take judicial notice of other courts' files and records as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Hansen*, 641 F.3d at 1219 n.2 (quoting Fed. R. Evid. 201(b)(2)). And the court may take judicial notice of filings in related cases. *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

however, support equitably tolling Plaintiff's obligation to timely file her complaint with OSHA.

First, although Sarbanes-Oxley provides that the 180-day period does not begin to run until after the date on which Plaintiff became aware of the *violation*, Plaintiff was plainly aware of the violation years before she submitted her OSHA complaint. As noted above, the discrete adverse action that is the basis for Plaintiff's retaliation claim was her March 2016 termination. Plaintiff was clearly aware of her March 2016 termination, thus the "violation", likely when it occurred and at most not later than when she filed the K12 Lawsuit on December 11, 2017, which was based on her termination. *See*, *e.g.*, *Rzepiennik*, 331 Fed. Appx. at 588-89 (discrete adverse action takes place when a decision is made and communicated to Plaintiff); 29 C.F.R. § 1980.103(d). Thus, Plaintiff did not file her OSHA complaint for many years after becoming aware of her termination or the violation.

Second, equitable tolling "is appropriate only where the circumstances of the case rise to the level of active deception ... where a plaintiff is lulled into inaction by her past employer, state or federal agencies, or the courts." *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir.1994) (internal quotation marks omitted). Moreover, equitable tolling will not apply "unless an employee's failure to timely file results from either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Id*. (internal quotation marks omitted). Application of equitable tolling is within the discretion of the Court, *Smith v. Johnson County Bd. Of Country Comm'rs*, 56 Fed. Appx. 879, 883 (10th Cir.

-8-

2003), and should "be applied sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Plaintiff has not sufficiently made allegations in this case supporting equitable tolling. Fundamentally, equitable tolling is inapplicable where, as here, Plaintiff's retaliation claim is dependent upon knowledge she affirmatively admits she did not have. As a result, to plead facts supporting tolling Plaintiff necessarily must plead facts indicating that she could not have been retaliated against. For example, Plaintiff does not allege she ever made complaints about any fraud or securities law violations *before* she was terminated. Indeed, Plaintiff alleges she did not have actual or presumptive knowledge of the alleged fraud until December 2022, which would make it impossible for her to have been retaliated against in March 2016 for providing information about or assisting in any investigation of securities law violations at that time. Moreover, Plaintiff specifically alleges she complained about discrimination and exhausted her administrative remedies with the EEOC in 2013 and 2015, s*ee* Docket No. 2, Ex. 16 at p. 2, but never alleges she knew of or complained about any securities law violations before her March 2016 termination.[3] At most, the Second Amended Complaint makes vague and conclusory allegations that Plaintiff was retaliated against for complaining about "prohibited and deceptive activities in this claim" and that Defendants conspired to withhold information about their wrongdoing from her. *See* Docket No. 2, Ex. 16 at pp.

---

[3] Plaintiff neither specifies the contents of her May 15, 2023 OSHA complaint nor attaches a copy of it to the Second Amended Complaint. Thus, the undersigned Magistrate Judge has no way of assessing whether her "complaints" would even fall under the ambit of the Sarbanes-Oxley whistle-blower protections had they been timely filed.

4-5. While the Court "assume[s] the truth of all well-pleaded facts in the complaint," and construes all reasonable inferences in the light most favorable to the Plaintiff, *Western Watersheds*, 869 F.3d at 1193, it need not do so for a pleading that only offers "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 577).[4] Caught in a catch-22 between being kept in the dark about wrongdoing and terminated for complaining about such wrong-doing, Plaintiff offers nothing more than vague conclusory statements that information was withheld from her, yet she was terminated for complaining about unspecified "prohibited activities." As a result, even if Plaintiff could adequately plead that Defendants actively deceived her about the ongoing fraud by withholding information from her, such deception made it impossible for her to complain about or report those actions, which is a necessary element for her retaliation claim.

Similarly, Plaintiff fails to plead facts supporting equitable tolling under either extraordinary circumstances or that she filed the correct claim mistakenly in the wrong forum. Neither allegations that Defendants accused Plaintiff of child abuse nor circumstances related to the COVID-19 pandemic support extraordinary circumstances.

---

[4] Because Plaintiff is *pro se*, the Court liberally construes her pleading to do substantial justice. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "[t]his liberal treatment is not without limits, and this court has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (internal quotation omitted). "[T]he generous construction that we afford *pro se* pleadings has limits, and we must avoid becoming the plaintiff's advocate." *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1024 (10th Cir. 2012) (assuming without deciding that the liberal construction principles applied in a jurisdictional inquiry).

There is nothing about the child abuse allegation that supports any inference that Plaintiff engaged in some protected activity under Sarbanes-Oxley resulting in a retaliatory accusation or termination. Moreover, the COVID pandemic did not occur until early 2020, nearly four years after Plaintiff's termination from K12, so it cannot be a basis for failing to learn of or any act related to her termination. Lastly, Plaintiff alleges her complaints to various media, state agencies, and state and federal legislatures constitutes a precise claim in the wrong forum is misplaced. Equitable tolling may apply where the Plaintiff "did not sleep on [her] rights but brought an action within the statutory period in the state court of competent jurisdiction. …" *Burnett v. N.Y. Cent. R.R. Co.* 380 U.S. 424, 429 (1965). Plaintiff again plainly fails to plead plausible facts supporting such a scenario for equitable tolling. Plaintiff did not file any action in any forum within the prescribed time. Thus, Plaintiff does not plead any plausible facts supporting equitable tolling of her claim for seven years after her termination.

### B.  Plaintiff's Retaliation Claim is Time Barred

As previously noted, the Sarbanes-Oxley administrative exhaustion requirement is mandatory and is "akin to a statute of limitations." *Newman*, 901 F.3d at 25 (quoting *Bonilla*, 194 F.3d at 278). Also, as previously noted, Plaintiff failed to timely file her OSHA complaint within 180-days of her termination. As a result, Plaintiff failed to timely meet the administrative prerequisite to filing the instant lawsuit and is now time barred from doing so.

### C.  Plaintiff Fails to Plead a Sarbanes-Oxley Retaliation Claim

Even if Plaintiff could overcome her failure to timely exhaust her administrative remedies, she does not set forth a plausible claim for Sarbanes-Oxley retaliation. To establish the elements of a prima facie claim for violating § 1514A, Plaintiff "must show: (1) she engaged in protected activity or conduct; (2) the employer knew of her protected activity; (3) she suffered an unfavorable personnel action; and (4) her protected activity was a contributing factor in the unfavorable personnel action." *Lockheed Martin Corp. v. Administrative Review Bd, United States Dept. of Labor*, 717 F.3d 1121, 1129 (10th Cir. 2013); 18 U.S.C. § 1514A(b)(2)(C); 49 U.S.C. § 42121(b); 29 C.F.R. § 1980.104(b)(1) (2007); *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir.2009) (collecting cases). Plaintiff fails to allege any plausible facts supporting the first, second or fourth elements.

Plaintiff does not plausibly allege she engage in protected activity or conduct prior to her March 2016 termination. Section 1514A)(a)(1) establishes six categories of protected employee conduct: violations of 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1344 (bank fraud), § 1348 (securities fraud), any rule or regulation of the SEC, or any provision of Federal law relating to fraud against shareholders. *Lockheed Martin*, 717 F.3d. at 1130. Many of Plaintiff's allegations in the Second Amended Complaint appear to be a rehash of issues she litigated in the K12 Lawsuit, such as alleged discrimination due to race, allegations of child abuse, harming her reputation, perjured testimony regarding her employment contract, and requiring her to arbitrate her claims in the K12 Lawsuit. At most, Plaintiff makes vague and conclusory statements that she

was: "retaliated against and injured for complaining which is prohibited by … the Sarbanes Oxley Act" (Docket No. 2, Ex. 16 at p.1); "Tatum et al[.] violated the securities laws by failing to publicly disclose OVCA's use of program grant funds and how abuse of these funds impacted special education and Title I students" (*Id*. at p. 4); retaliated against and replaced for "complaining about lack of transparency and accountability as well as prohibited and deceptive activities in this claim" (*Id*. at p. 5); her reputation was "harmed after complaining about prohibited activities, which is securities fraud" (*Id*.); and "[r]etaliation by spreading false and malicious accusations and statements pertaining to a professional reputation is prohibited under [Sarbanes-Oxley] (*Id*. at p. 6). None of these vague and conclusory allegations, however, actually allege that Plaintiff was aware of any securities law violations or that she complained about or reported such issues to anyone *before* she was terminated. In fact, Plaintiff affirmative alleges she was unaware of the alleged fraud, which appears to be her shorthand allegation for violation of securities laws, until December 2022. *Id*. at p. 4. Thus, Plaintiff could not have had a reasonable belief that she reported conduct falling under one of the six categories of violations of federal statutes or regulations before she was terminated because she affirmatively alleges she was unaware of such allegations until December 2022. *See Lockheed Martin*, 717 F.3d at 1132.

For the same reasons, Plaintiff does not allege any facts that K12 knew of her protected activity or that her protected activity was a contributing factor in her termination. Again, Plaintiff's vague and conclusory statements do not support a plausible inference that she knew of any potential securities law violations before her

termination, that she reported or complained about such violations before her termination, that Defendants were aware she had reported any such violations, or that her reporting such violations was a contributing factor in her termination. Therefore, Plaintiff does not plausibly allege a Sarbanes-Oxley retaliation claim.

### D. Plaintiff's State Law Claims

Before it can address the substance of Plaintiff's state law claims, the undersigned Magistrate Judge must first assess the Court's jurisdiction over the pendant state law claims considering the recommendation that Plaintiff's Sarbanes-Oxley retaliation claim be dismissed. The doctrine of supplemental jurisdiction, codified at 28 U.S.C. § 1367, is derived from the "pendent jurisdiction" principles set out by the Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and *Carnegie–Mellon University v. Cohill*, 484 U.S. 343 (1988). *Gibbs* established that pendent jurisdiction "is a doctrine of discretion," 383 U.S. at 726, and *Cohill* directed district courts to "deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." 474 U.S. at 357. Section 1367 "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." 28 U.S.C. § 1367(a). Section 1367(c) states:

> The district courts may decline to exercise supplemental jurisdiction over a claim ... if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). If one of the factors is present, then, the exercise of supplemental jurisdiction is discretionary. *Id*.

The Tenth Circuit holds that district courts should presume to decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)). That conclusion is consistent with the Supreme Court's statement that:

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Gibbs*, 383 U.S. at 726 (footnote omitted).

It is not an abuse of discretion for the Court to decline to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) ... where it has dismissed all claims over which it has original jurisdiction." *Muller v. Culbertson*, 408 Fed. Appx. 194, 197 (10th Cir. 2011). Because the undersigned Magistrate Judge recommends that the Court dismiss Plaintiff's Sarbanes-Oxley retaliation claim, the only basis for this Court's original jurisdiction, it further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's pendant state law claims under the 28 U.S.C. §

1367(c) factors. First, as noted above, the undersigned Magistrate Judge recommends that Plaintiff's federal law claim be dismissed, and such claim is the only basis for this Court's original subject matter jurisdiction. Further, there are no exceptional circumstances or other compelling reasons present in support of exercising jurisdiction over the state law claims, particularly at this early stage of the case. Moreover, as even Tatum acknowledges in her Motion to Dismiss, it is not entirely clear what state law claims Plaintiff is or is attempting to assert. Therefore, in the interest of fairness and comity it is best to have whatever state law claims Plaintiff is attempting to assert adjudicated by an Oklahoma state court.

### E. Leave to Further Amend

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993)).

Plaintiff previously amended her complaint two times, although both amendments were before removal to this Court. Nonetheless, Plaintiff affirmatively alleges she did not learn of the alleged fraud or securities law violations until many years after her termination. As noted above, Plaintiff has not and cannot allege she complained of or

reported such violations before her termination or that she was retaliated against for such reporting. Therefore, the undersigned Magistrate Judge finds any further amendment would be futile and recommends that Plaintiff not be granted leave to further amend.

### F.  Certificate of Appealability – *In Forma Pauperis* Status

Tatum seeks a certification from the Court that any appeal by Plaintiff in this case would not be taken in good faith, thereby preventing her approval of *in forma pauperis* status for any appeal. *See* Docket No. 17, n. 14. Tatum makes this request in the conclusion of her motion with no argument in support other than a citation to a criminal case in which *in forma pauperis* status was granted. *Id*.

Plaintiff was granted *in forma pauperis* status in this case. *See* Docket No. 31. Under Fed. R. App. P. 24(a)(3), a party previously permitted to proceed *in forma pauperis* may proceed on appeal *in forma pauperis* as well unless the court certifies that the appeal is not taken in good faith or finds the party is not otherwise entitled to so proceed. *See* Fed. R. App. P. 24(a)(4)(B). Generally, good faith is an objective standard measured by whether an appeal is "frivolous" or lacks "rational argument on the law or facts." *Coppedge v. United States*, 369 U.S. 438, 448 (1962); *see also Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir.2000) (The party seeking leave to appeal *in forma pauperis* must demonstrate to the district court that "a reasonable person could suppose that the appeal has some merit."). At this stage of the litigation and given the paucity of the argument on the issue, the undersigned Magistrate Judge is not prepared to say that a reasonable person could not say any possible appeal by Plaintiff has no merit. Therefore,

the undersigned Magistrate Judge does not recommend a certification denying Plaintiff *in forma pauperis* status on any future appeal in this case.

## Conclusion

Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant Sheryl Tatum's Motion to Dismiss and Brief in Support Thereof [Docket No. 17] should be GRANTED IN PART and DENIED IN PART. Plaintiff's claim for retaliation under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, should be dismissed with prejudice and Plaintiff's remaining pendant state law claims remanded as lacking subject matter jurisdiction. The undersigned Magistrate Judge further RECOMMENDS that, if the Court adopts this Report and Recommendation, Defendant Belinda Haagsma's Motion to Dismiss [Docket. No. 44] and Defendant Nicole Ellison's Motion to Dismiss [Docket. No. 45] be DENIED as moot. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

DATED this 25th day of March, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**